# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

KENNETH J. RUTHERFORD, JR.,
   Plaintiff,

vs

WARDEN, SOUTHERN OHIO
CORRECTIONAL FACILITY, et al.,
   Defendants.

Case No. 1:15-cv-164

Barrett, J.
Litkovitz, M.J.

**ORDER AND REPORT
AND RECOMMENDATION**

     Plaintiff, an inmate at the Toledo Correctional Institution (TCI), brings this civil rights action under 42 U.S.C. § 1983 against the warden of the Southern Ohio Correctional Facility (SOCF) in Lucasville, Ohio, as well as numerous SOCF correctional officers and employees. (*See* Doc. 1, Complaint, p. 4, at PAGEID#: 15). By separate Order, plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. This matter is before the Court for a *sua sponte* review of the complaint to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

     In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1). A complaint may be dismissed as

frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall,* 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin,* 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke,* 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915 (e)(2)(B)(ii) and 1915A(b)(1). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); *see also Hill,* 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). The Court must accept all well-

2

pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

Plaintiff brings this § 1983 action against SOCF's Warden, Donald Morgan; SOCF Deputy Wardens, Larry Greene and William Cool; "Dr. B. Ahmed"; "Nurse Mrs. Joiner"; and the following SOCF correctional officers: Randy Jackson, Charlie Williamson, Brian Nolan, Officer Sweeny, Officer Lewis, Officer Distel and Officer Butterbaugh. (*See* Doc. 1, Complaint, p. 4, at PAGEID#: 15).

Plaintiff first alleges that on July 3, 2014, when he was incarcerated at SOCF, he was involved in a "verbal dispute" with defendant Randy Jackson. (*Id.*, p. 5, at PAGEID#: 16). Jackson contacted his superior, defendant Charlie Williamson, and told Williamson that plaintiff had assaulted him. (*Id.*). Williamson came to plaintiff's cell and told plaintiff to "cuff up or get sprayed with the chemical ma[c]e." (*Id.*). When plaintiff asked why he was being cuffed and taken to segregation, Williamson said "for assaulting my officer." (*Id.*). Plaintiff allowed Williamson to cuff his hands behind his back although he also expressed "[t]his is some straight bullshit that ya'll would set me up like this." (*Id.*). On exiting the cell, Williamson instructed

3

Jackson to search plaintiff "for contraband." (*Id.*). While he was subjected to the search, plaintiff "continued to voice [his] opinion" and engaged in more verbal sparring with the officers. (*Id.*). Jackson told plaintiff at one point that if plaintiff said "another fucking word I'm going to bust your ass." (*Id.*). Although Williamson was "obligated and authorized by policy to escort [plaintiff] to segregation," Jackson was the one who escorted plaintiff "toward the crash gate." (*Id.*, pp. 5, 7, at PAGEID#: 16, 18). When they got through the gate, plaintiff attempted to "run up the stairs three at a time" so that he could "be in plain view of the camera and not in the blind spot where [Jackson] could bang [plaintiff's] face and head into the crash gate." (*Id.*, p. 7, at PAGEID#: 18). Jackson "reached down and took [plaintiff's] foot from underneath [him] and slammed [plaintiff] on [his] head into the corridor window [and] onto the floor instantly knocking [plaintiff] unconsc[ious]." (*Id.*). Plaintiff alleges that he ended up with a "tennis ball size knot" on his head and torn ligaments in his right knee. (*Id.*). Plaintiff also claims that Jackson "fabricated a story," informing "his superiors that [plaintiff had] assaulted him by kicking him in the stomach and crotch area while going up the stairs," and that Williamson corroborated Jackson's account. (*Id.*).

Plaintiff next alleges that he was taken to segregation to be changed out of his clothing and to see "Nurse Mrs. Joiner." (*Id.*). Plaintiff states that Joiner "and the officers who were changing him out" laughed when he could not tell them the correct date or the name of the prison. (*Id.*). Plaintiff alleges that Joiner "noted some things on paper" and then left him without making an assessment as to whether he was "consc[ious] enough to not need further treatment." (*Id.*, pp. 7-8, at PAGEID#: 18-19).

Plaintiff was eventually escorted to a cell "with no bedding material or bed, no food, or

running sink or toilet water, no property or hygiene." (*Id.*, p. 8, at PAGEID#: 19). The cell also "reeked of urine and feces" and was "infested with roaches, fleas and mice." (*Id.*). Plaintiff states that he was kept in that cell for five days from July 3 to July 7, 2014. (*Id.*). Plaintiff claims that over that July 4th holiday weekend, the officers assigned to the housing block "all refused to assist him with anything," saying "we do nothing for those who assault our co-workers." (*Id.*). The officers also refused to provide plaintiff with "correct food servings/meals" to accommodate his diet and religion and told plaintiff that he had to wait until the Monday after the holiday weekend for food service workers to place him on the "vegetarian list." (*Id.*). The officers included the following named defendants: Officer Sweeny, Officer Lewis, Officer Distel and Officer Butterbaugh. (*Id.*).

Plaintiff alleges that on July 7, 2014, the unit manager, defendant Brian Nolan, responded to his "housing block per Deputy Warden William Cool to inspect [his] living conditions." (*Id.*). Nolan "witnessed the inhumane conditions" and cleaned the cell thoroughly. (*Id.*). Nolan also unplugged the toilet and ordered Officer Sweeny to provide plaintiff with a "veggie meal." (*Id.*, p. 9, at PAGEID#: 20). When Nolan ordered Sweeney to find out "why the water was not on," Sweeny discovered that only hot water was available and that the "cold water was out of order." (*Id.*). Although plaintiff was offered a shower, he "had no property or hygiene to bathe or wash with." (*Id.*). An hour later, plaintiff was moved to a "more stable and suitable cell." (*Id.*). Plaintiff states that he did not receive his personal "segregation property" until July 8, 2014. (*Id.*).

Plaintiff next alleges that on July 8, 2014, he told a nurse that he was experiencing a severe migraine headache and "unbearable pain" in his knee and needed an MRI. (*Id.*). On July

5

16, 2014, defendant Dr. Ahmed ordered only an X-ray although he knew that plaintiff had "no broken bones." (*Id.*). Plaintiff "repeatedly" informed Dr. Ahmed that he needed treatment for torn ligaments in his knee, but Dr. Ahmed "refused to give [him] adequate medical attention." (*Id.*). Plaintiff states that the pain was still causing issues when he was transferred weeks later to TCI, where he was given a "steroid cortisone shot" that "worked temporarily." (*Id.*).

Plaintiff alleges that a "use of force investigation" was conducted, which resulted in the finding that Jackson had used excessive force against him that was "not justified." (*Id.*, p. 10, at PAGEID#: 21). Plaintiff states that Deputy Warden Larry Greene viewed the DVR of the incident and saw that plaintiff "never once assaulted . . . Jackson" and had not presented "any harm or danger" to Jackson. (*Id.*). In addition, Warden Donald Morgan concluded that Jackson was subject to disciplinary sanction and removed him from "his post/duties as a correctional officer." (*Id.*).

Finally, plaintiff alleges that since his "first week" in state custody, he has "been a target." (*Id.*). He claims that the issues he is currently experiencing stem "from a situation that took place 9/4/2008" and that ever since then he has "been tortured, set up, sexually assaulted, harassed, and racially profiled." (*Id.*). Plaintiff states: "It's all retaliation and every prison administration in Ohio know[s] my situation." (*Id.*).

As relief, plaintiff requests compensatory and punitive damages for the "pain and suffering and mental anguish" he has endured and "for being deprived of . . . medical treatment." (*Id.*, p. 6, at PAGEID#: 17). He also requests the issuance of orders directing that plaintiff "be seen by [an] outside hospital for a full exam of [his] knee and severe headaches" and that plaintiff be transferred to another "out of state" prison while this civil suit takes place in order to

protect him from "more harassment and retaliation." (*Id.*).

At this juncture, the Court concludes that plaintiff may proceed with a cause of action for damages against defendant Jackson to the extent that plaintiff has alleged that Jackson violated his Eighth Amendment rights by using excessive force against him in the incident that occurred on July 3, 2014 at SOCF. Plaintiff also may proceed with a cause of action for damages against defendants Joiner and Ahmed to the extent that he has alleged they violated his Eighth Amendment rights by failing to assess or provide treatment for the head and knee injuries that he suffered in the July 3, 2014 incident. Finally, plaintiff may proceed with a cause of action for damages against defendants Sweeny, Lewis, Distel and Butterbaugh to the extent that he has alleged that the correctional officers violated his Eighth Amendment rights by failing to assist him or otherwise ensure that his living conditions satisfied the minimal standards of decency when he was incarcerated from July 3-7, 2014 in a segregation cell without bedding, food or running water and which also was infested with roaches, fleas and mice and contained a plugged-up toilet. *See* 28 U.S.C. § 1915(e)(2)(B).

However, the complaint is subject to dismissal in all other respects.

First, plaintiff has not stated a viable claim for injunctive relief. To the extent that plaintiff seeks relief in the form of an order compelling the defendants to transport him to a hospital for examination and treatment of the injuries he suffered in the July 3, 2014 incident, the request is moot because plaintiff is no longer incarcerated at SOCF. *See, e.g., Parks v. Reans*, 510 F. App'x 414, 415 (6th Cir. 2013) (per curiam) (citing *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996)) (holding that the district court properly dismissed the plaintiff's request for injunctive and declaratory relief based on incidents that had occurred at a prison

facility where he was previously confined because the request was rendered "moot upon his transfer to a different facility"); *cf. Dulaney v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997) (holding that request for injunctive relief based on Eighth Amendment claim of denial of medical care was rendered moot by the plaintiffs' release from the prisons involved in the case). Plaintiff has not alleged any claim of denial of medical care against TCI prison officials. In any event, such a claim can only be brought in a separate complaint filed in the Northern District of Ohio, where TCI is located. To the extent plaintiff has generally alleged retaliation and harassment since the time he was first placed in state custody and seeks to be transferred to a prison outside the state during the pendency of this action, his claim is simply too conclusory to state an actionable claim upon which relief may be granted.

Second, plaintiff has failed to state a viable § 1983 claim against defendants Williamson and Jackson based on allegations of a verbal altercation and harassment during the July 3, 2014 incident that led to Jackson's alleged use of excessive force. Such conduct does not amount to a constitutional violation and, therefore, does not give rise to an actionable claim under § 1983. *See, e.g., Wingo v. Tennessee Dep't of Corr.,* 499 F. App'x 453, 455 (6th Cir. 2012) (citing *Ivey v. Wilson,* 832 F.2d 950, 955 (6th Cir. 1987)); *see also Chilcott v. Erie Cnty. Domestic Relations,* 283 F. App'x 8, 11 (3rd Cir. 2008) (and Sixth, Fifth and Tenth Circuit cases cited therein). *Cf. Johnson v. Unknown Dellatifa,* 357 F.3d 539, 545-46 (6th Cir. 2004) (affirming dismissal of § 1983 complaint against a correctional officer for failure to state a claim even though the complaint contained the following allegations amounting to "shameful and utterly unprofessional behavior" by the correctional officer: the correctional officer continuously banged and kicked plaintiff's cell door, threw the plaintiff's food trays so hard

that the top of the tray would fly off, made aggravating and insulting remarks to plaintiff, growled and snarled at plaintiff, smeared the plaintiff's window to prevent him from seeing out of it, behaved in a "racially prejudicial manner" toward the plaintiff and "intentionally harasse[d]" plaintiff "in an attempt to cause him to suffer a heart attack, stroke or nervous breakdown").

Third, plaintiff has not alleged an actionable § 1983 claim against Williamson or Jackson based on the allegation that Jackson "fabricated a story" to justify his use of force against plaintiff, which was corroborated by Williamson. Plaintiff has not alleged any facts even remotely suggesting that the false report was lodged in retaliation for plaintiff's exercising his First Amendment right to file grievances or complaints. Moreover, to the extent that plaintiff claims that his due process rights were violated, it is well-settled that "[f]alse accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are adjudicated in a fair hearing." *See Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005) (and Sixth Circuit cases cited therein); *see also Jones v. McKinney*, No. 97-6424, 1998 WL 940242, at *1 (6th Cir. Dec. 23, 1998) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2nd Cir. 1986)) (holding that the district court properly dismissed a complaint alleging that prison officials "deliberately issued a false disciplinary report" against the plaintiff as frivolous because "even if the disciplinary report was false, . . . a prisoner has no constitutionally protected immunity from being wrongly accused"); *Lee v. Pauldine*, No. 1:12cv77, 2013 WL 65111, at *8 (S.D. Ohio Jan. 4, 2013) (Litkovitz, M.J.) (Report & Recommendation) (holding that the plaintiff had failed to state a claim for a violation of his due process rights because even "[a]ccepting as true plaintiff's

allegation that [the] defendant . . . filed a false conduct report against him," the "act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights") (internal citation and quotation marks omitted), *adopted*, 2013 WL 646775 (S.D. Ohio Feb. 21, 2013) (Weber, J.). Here, plaintiff has alleged no facts to suggest that he was denied a fair hearing. Indeed, to the contrary, he has alleged that the investigation of the "use of force" incident resulted in a finding in his favor.

Fourth, plaintiff has not stated a claim against defendants Morgan, Greene, Cool, Nolan or Williamson based on any of the incidents that form the bases for plaintiff's claims that have been allowed to proceed against the other named defendants. The only allegations in the complaint pertaining to Morgan and Greene are that they found in plaintiff's favor after investigating the July 3, 2014 "use of force" incident and disciplined Jackson for his actions in that incident by removing him from his duties as a correctional officer. (*See* Doc. 1, Complaint, p. 10, at PAGEID#: 21). The only allegations in the complaint pertaining to Nolan and Cool were that Nolan, as directed by Cool, inspected plaintiff's living conditions on July 7, 2014, which was the Monday following the holiday weekend, and immediately took action to correct the problems in the segregation cell to which plaintiff had been confined over the holiday weekend, as well as to have plaintiff moved to a "more stable and suitable cell." (*Id.*, p. 9, at PAGEID#: 20). With respect to Williamson, plaintiff has suggested that Williamson may have violated prison policy by allowing Jackson to escort plaintiff to segregation on July 3, 2014. (*See id.*, pp. 5, 7, at PAGEID#: 16, 18). However, that allegation standing alone does not give rise to the inference that Williamson actually participated or acquiesced in Jackson's use of force against plaintiff while plaintiff was being escorted to segregation.

10

To the extent that plaintiff seeks to bring claims against Morgan, Greene, Cool, Nolan and Williamson in their supervisory roles at SOCF and over the other named defendants, plaintiff has failed to state a cognizable claim under § 1983. The doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto supervisory personnel. *Wingo*, 499 F. App'x at 455 (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981)). In the absence of any allegations that the supervisory defendants were personally involved or acquiesced in a subordinate's unconstitutional conduct, plaintiff has failed to state a claim against those individuals upon which relief may be granted by this Court. *See id.* (citing *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)). Although plaintiff has not alleged any claim based on the failure of the supervisory defendants to prevent or investigate any misconduct by prison staff or the conditions of the cell that plaintiff was confined in over the July 4th weekend in 2014, he still cannot prevail on any such claim absent allegations of "specific conduct" by those individuals indicating their "direct, active participation in the alleged misconduct." *See id. Cf. Belcher v. Warden, Southern Ohio Corr. Facility,* No. 1:12cv985, 2013 WL 122154, at *2 (S.D. Ohio Jan. 9, 2013) (Litkovitz, M.J.) (Report & Recommendation), *adopted*, 2013 WL 684738 (S.D. Ohio Feb. 25, 2013) (Weber, J.).

Finally, as discussed above, in his complaint, plaintiff generally complains that he has "been a target" of harassment ever since he was first placed in state custody and that after an incident that occurred in September 2008, he has "been tortured, set up, sexually assaulted, harassed, and racially profiled." (Doc. 1, Complaint, p. 10, at PAGEID#: 21). The allegation is simply too conclusory to state a claim for relief against any of the named defendants. In any

11

event, to the extent the claim is based on incidents that occurred more than two years prior to the filing of the instant action, plaintiff's cause of action is time-barred. *See, e.g., Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (holding that the "appropriate statute of limitations for 42 U.S.C. § 1983 civil rights actions arising in Ohio is contained in Ohio Rev. Code § 2305.10, which requires that actions for bodily injury be filed within two years after their accrual"); *see also Wallace v. Kato*, 549 U.S. 384, 387 (2007) (and Supreme Court cases cited therein) (holding that the statute of limitations governing § 1983 actions "is that which the State provides for personal-injury torts"). Although the statute-of-limitations is an affirmative defense, when it appears clear on initial screening of the complaint that the action is time-barred, the complaint may be dismissed for failure to state a claim upon which relief may be granted. *See Jones v. Bock*, 549 U.S. 199, 215 (2007). *Cf. Fraley v. Ohio Gallia Cnty.*, No. 97-3564, 1998 WL 789385, at *1-2 (6th Cir. Oct. 30, 1998) (holding that the district court "properly dismissed" the *pro se* plaintiff's § 1983 civil rights claims under 28 U.S.C. § 1915(e)(2)(B) because the complaint was filed years after Ohio's two-year statute of limitations had expired); *Anson v. Corr. Corp. Of America*, No. 4:12cv357, 2012 WL 2862882, at *2-3 (N.D. Ohio July 11, 2012) (in *sua sponte* dismissing complaint under 28 U.S.C. § 1915(e), the court reasoned in part that the plaintiff's *Bivens* claims asserted "six years after the events upon which they are based occurred" were time-barred under Ohio's two-year statute of limitations for bodily injury).

Accordingly, in sum, the undersigned concludes that all claims alleged by plaintiff in his complaint are subject to dismissal on the ground that plaintiff has failed to state a claim upon which relief may be granted, except that plaintiff may proceed with the following limited causes of actions for damages: (1) Eighth Amendment excessive force claim against defendant Jackson

stemming from an incident that occurred at SOCF on July 3, 2014; (2) Eighth Amendment claim against defendants Joiner and Ahmed stemming from their alleged failure to assess or provide treatment for the head and knee injuries that plaintiff suffered in the July 3, 2014 incident; and (3) Eighth Amendment claim against defendants Sweeny, Lewis, Distel and Butterbaugh for their alleged failure to assist plaintiff or otherwise ensure that his living conditions satisfied the minimal standards of decency when plaintiff was incarcerated from July 3-7, 2014 in a segregation cell at SOCF.

## IT IS THEREFORE RECOMMENDED THAT:

The following causes of action alleged in the complaint should be **DISMISSED** on the ground that plaintiff has failed to state a claim upon which relief may be granted by this Court: (1) plaintiff's claims for injunctive relief; (2) any claim against defendants Jackson and Williamson based on allegations of a verbal altercation and harassment that occurred at SOCF on July 3, 2014; (3) any claim against defendants Jackson and Williamson based on the allegation that Jackson "fabricated a story," which was corroborated by Williamson, to justify his use of force against plaintiff on July 3, 2014; (4) any claim against defendants Morgan, Greene, Cool, Nolan or Williamson based on any of the incidents that form the bases for plaintiff's claims that have been allowed to proceed against the other named defendants; and (5) plaintiff's conclusory claim that he has "been a target" of harassment ever since he was first placed in state custody and that after an incident that occurred in September 2008, he has "been tortured, set up, sexually assaulted, harassed, and racially profiled." It is **FURTHER RECOMMENDED** that because plaintiff has not stated a claim upon which relief may be granted against defendants Morgan, Greene, Cool, Nolan and Williamson, those individuals should be **DISMISSED** as named

defendants in this action.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff may proceed with the following causes of action for damages : (1) Eighth Amendment excessive force claim against defendant Randy Jackson stemming from an incident that occurred at SOCF on July 3, 2014; (2) Eighth Amendment claim against defendants "Nurse Mrs. Joiner" and "Dr. B. Ahmed" stemming from their alleged failure to assess or provide treatment for the head and knee injuries that plaintiff suffered in the July 3, 2014 incident; and (3) Eighth Amendment claim against defendants Sweeny, Lewis, Distel and Butterbaugh stemming from their alleged failure to assist plaintiff or otherwise ensure that his living conditions satisfied the minimal standards of decency when plaintiff was incarcerated from July 3-7, 2014 in a segregation cell at SOCF.

The United States Marshal shall serve a copy of the complaint, summons, the separate Order issued this date granting the plaintiff *in forma pauperis* status, and this Order and Report and Recommendation upon the following defendants as directed by plaintiff, with costs of service to be advanced by the United States: "Dr. B. Ahmed"; "Nurse Mrs. Joiner"; Randy Jackson; Officer Sweeny; Officer Lewis, Officer Distel; and Officer Butterbaugh.

2. Plaintiff shall serve upon defendants or, if appearance has been entered by counsel, upon defendants' attorney(s), a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date a true and correct copy of any document was mailed to defendants or their counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be

disregarded by the Court.

  3. Plaintiff shall inform the Court promptly of any changes in his address which may occur during the pendency of this lawsuit.

Date: 3/23/15

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KENNETH J. RUTHERFORD, JR.,
    Plaintiff,

vs

WARDEN, SOUTHERN OHIO
CORRECTIONAL FACILITY, et al.,
    Defendants.

Case No. 1:15-cv-164

Barrett, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc